UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 10 CR 176-2 |
| | ) | |
| VICTOR GARCIA | ) | Hon. Amy J. St. Eve |

## MEMORANDUM OPINION AND ORDER

On July 22, 2010, Defendant Victor Garcia ("Garcia") moved to suppress evidence obtained from the search of his apartment, alleging violations of the Fourth and Fifth Amendments to the Constitution of the United States, Federal Rules of Criminal Procedure 2 and 12(b)(3) and rulings by the Supreme Court of the United States. For the following reasons, the Court denies Garcia's motion.

## BACKGROUND

The government and Defendant Garcia agree on certain facts. On March 3, 2010, law enforcement agents arrested Garcia in connection with a drug investigation. After Garcia's arrest, law enforcement officers searched his vehicle and found a piece of paper listing the address of 1822 Green Lane in Palatine, Illinois. The officers then went to that address, which was the home of Garcia's sister, Raquel Garcia, and his niece, Monica Dominguez ("Dominguez"). Defendant's son, Victor Garcia Jr. ("Victor Jr."), was at that location when officers arrived late on the evening of March 3, 2010. Agents questioned Raquel Garcia, who told them that Victor Garcia lived nearby at 1846 Green Lane, Apartment 3B, in Palatine, Illinois. Dominguez then signed a consent form for the officers to search Garcia's apartment. Defendant's apartment was opened with a key. During their search of Defendant's apartment,

law enforcement agents found thirteen individually wrapped packages that each weighed a kilogram and later tested positive for cocaine.

The government and Defendant Garcia, however, disagree on whether Dominguez had the authority to consent to the search of Garcia's apartment. On September 23, 2010, the Court held a hearing on Garcia's motion to suppress the evidence. The Court carefully evaluated the demeanor and credibility of each witness who testified at the hearing, including body language, tone of voice, facial expressions, mannerisms, and other indicative factors.

**I.     Officer Everett's Testimony**

During the hearing, the government called as witnesses Officers Jason Everett ("Everett") and Robert Kotsianis ("Kotsianis"). Officer Everett has been a Drug Enforcement Administration ("DEA") task force officer for approximately three years. Prior to becoming a task force officer, he was an officer with the City of Rolling Meadows Police Department.

Officer Everett testified that on the night of March 3, 2010, he interviewed Raquel Garcia and Dominguez, who spoke fluent English and acted as a translator for her mother, Raquel Garcia, who spoke Spanish and only limited English. Officer Everett testified that Raquel Garcia – through Dominguez's translations – informed him that Dominguez was the primary babysitter for Victor, Jr. Everett further testified that Dominguez told him that Defendant cared for Victor, Jr. because the mother of Victor, Jr. was located somewhere in California and unreachable. As such, Dominguez told Officer Everett that she cared for Victor, Jr. because Defendant had to be out of the house both during the day and night for work. Everett further testified that Dominguez informed him that she made sure that Victor, Jr. Got to school in the morning, and sometimes waited for him at Defendant's apartment when Victor, Jr. came home

2

from school.  In addition, Everett explained that Dominguez told her that Defendant had given her a key to his apartment to use and to handle the needs of the apartment, including helping Victor, Jr. get clean clothes and get ready for school.  She further indicated, according to Everett, that she had unlimited access to the home.  Everett additionally testified that Dominguez told him that she was willing to let them search Defendant's apartment and that she thought she had permission to do so.  Dominguez, according to Officer Everett, subsequently signed a consent form in Spanish, consenting to the search of Garcia's apartment.  (Gov. Ex. 1.)  Dominguez then led the officers to Victor Garcia's apartment, where she used a key to open the door for them.

## II.     Officer Kotsianis' Testimony

Officer Kotsianis also testified at the hearing.  Officer Kotsianis has been a police officer with Palos Park, Illinois, for approximately ten years, and also has served as a DEA Task Force Officer for approximately four years.  He was also involved in the controlled delivery to Defendant and the subsequent search of his apartment on March 3, 2010.

Specifically, Kotsianis testified that he went to 1822 Green Lane in Palatine after Defendant's arrest.  When he and other law enforcement agents first arrived, they spoke with Raquel Garcia and Monica Dominguez, who assisted with interpreting for Raquel Garcia because Raquel Garcia only spoke fluent Spanish and broken English.  Dominguez, according to Kotsianis, was fluent in both Spanish and English.  Raquel Garcia explained – through Dominguez's translation – that she was Defendant's sister and Monica Dominguez was his niece.  She further told Kotsianis that Defendant resided in the apartment at 1846 Green Lane. In addition, Kotsianis testified that Raquel Garcia told the officers that Victor, Jr. was Defendant's son and that she and Dominguez babysat for him.

3

Officer Kotsianis also testified about his conversation with Dominguez which took place in English. According to Kotsianis, Dominguez told him that she watched Victor, Jr. when Defendant was not around, which was often. She babysat for him at her apartment, but also had access to 1846 Green Lane in order to obtain whatever was necessary to care for Victor, Jr. Officer Kotsianis testified that Dominguez told him that she had a key to the apartment at 1846 Green Lane, and did not express that her access was limited in any way. He explained that Dominguez signed a consent form, although he did not personally witness her do so. Officer Kotsianis further testified that Dominguez led the officers to Garcia's apartment and used a key to allow them into the apartment. The officers searched the apartment, including the closet in the master bedroom which contained children's clothing and two book bags with kilograms of cocaine.

### III. Monica Dominguez's Testimony

Defendant called Monica Dominguez as a witness at the hearing. She is Defendant's niece. Dominguez spoke fluent English at the hearing. She lives with her mother at 1822 Green Lane and goes to school at Northeastern Illinois University.

Dominguez testified that her mom, Raquel Garcia, was the primary babysitter of Victor, Jr., not Doniniguez, and that she babysat him at 1822 Green Lane. Dominiguez testified that she only babysat for him approximately one time per week. She further testified that neither she nor her mom babysit Victor, Jr. at 1846 Green Lane. In addition, Dominguez said that she rarely went to Defendant's apartment and that she never had access to the apartment when Defendant was not home. Ms. Dominguez also testified that she did not have a key to Defendant's apartment. Ms. Dominiguez added that she does not receive mail at 1846 Green

4

Lane, does not pay any of the bills for that apartment, is not on the lease, and does not keep any personal belongings there. She denied telling the agents that she had a key to the apartment or that she had unfettered access to it. She admitted, however, that she was "in shock" when the agents arrived at her apartment on March 3, 2010.

Ms. Dominguez initially testified that she was unaware that her mother had a key to Defendant's apartment but she learned that she "might have" had one on March 3, 2010. She subsequently said, however, that the law enforcement agents brought the key, gave the key to her mother, and then her mother gave her the key. It was the key to Defendant's apartment. Further, Ms. Dominguez testified that after the agents entered Defendant's apartment, they asked her to sign the consent to search form. Although Dominguez signed it, she testified that she did not read it before signing it. She also testified that it is possible that the agents explained the consent form to her but she was not "really listening." She further testified that she only speaks broken Spanish and that she can only read a few phrases, even though she has lived her entire life with her mother who only speaks and reads Spanish. She subsequently said that she understands her mother when she speaks to her in Spanish because "she uses simple words."

Ms. Dominguez also testified that Victor, Jr. was at her apartment the night her uncle was arrested waiting for Defendant to pick him up. She admitted that she was worried that the officers would take Victor, Jr. to the Department of Children and Family Services. At the end of her testimony, however, Ms. Dominguez conceded that it is possible that the law enforcement agents asked her questions and she gave the wrong answer because a lot was going on that evening and Victor, Jr. was her primary concern.

Defendant Garcia moves to suppress the evidence obtained from the search of his apartment at 1846 Green Lane. He argues that the agents conducted a warrantless search of it and that Ms. Dominguez did not have apparent authority to consent to the search.

**LEGAL STANDARD**

When law enforcement officials conduct a warrantless search, the government must demonstrate "by a preponderance of the evidence that the search fell within one of the recognized exceptions to the warrant requirement." *United States v. Zahursky*, 580 F.3d 515, 521 (7th Cir. 2009)(citing *United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000)). Courts have upheld warrantless arrests if the arresting law enforcement officials "have probable cause to believe that the individual engaged in criminal conduct." *United States v. Burnside*, 588 F.3d 511, 517 (7th Cir. 2009).

Further, law enforcement agents may lawfully gain access to a defendant's home without a warrant if the officers reasonably believed that the person giving them access had the actual or apparent authority to consent to the search. *United States v. Ryerson*, 545 F.3d 483, 489 (7th Cir. 2008). Apparent authority to consent to a search exists "when the facts available to an officer at the time of a search would allow a person of reasonable caution to believe that the consenting party had authority over the premises." *Id.* (citing *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990)). *See also United States v. Pineda-Buenaventura*, __ F.3d __, 2010 WL 3565270 at * 13 (7th Cir. Sept. 15, 2010). Courts must consider what the officers knew at the time they sought consent, not facts that came to light after the search began. *United States v. Groves*, 470 F.3d 311, 319 (7th Cir. 2006). An officer has "a duty to inquire further as to a third party's authority to consent to a search, if the surrounding circumstances make that person's

6

authority questionable." *United States v. Goins*, 437 F.3d 644, 648 (7th Cir. 2006). *See also United States v. Alexander*, 573 F.3d 465, 474 (7th Cir. 2009).

In determining if a person has apparent authority to consent to a search, law enforcement officers may consider a variety of factors, including whether the person consenting possesses a key to the home, lives at the residence, or performs household chores at the home. *United States v. Groves*, 530 F.3d 506, 509-510 (7th Cir. 2006). In *Groves,* the court also considered whether the person giving consent received mail at that residence, kept clothing at the home, and was allowed into the home when the owner was not present. *Id.* The *Groves* court, however, specified that the factors it listed were not an exhaustive list and were merely offered to show the "types of facts that should and could be considered in evaluating the issue of authority to consent to search." *Id.* n.3.

## ANALYSIS

Defendant argues that the Court should suppress the evidence that law enforcement officers obtained during the search of Garcia's home because Ms. Dominguez did not have apparent authority to consent to the search. The government responds that the law enforcement officers made the necessary inquiry into Dominguez's authority to consent and that the officers reasonably believed that she had that authority.

Courts have found apparent authority to consent to a search "when the facts available to an officer at the time of a search would allow a person of reasonable caution to believe that the consenting party had authority over the premises." *United States v. Ryerson*, 545 F.3d at 489. Here, both Everett and Kostianis testified credibly and consistently about the events in question on the evening of March 3, 2010. Everett credibly testified that Dominguez told him that she

7

regularly accessed the apartment to care for Garcia's son, even allowing the boy's friends to visit with him at Garcia's apartment. Additionally, Everett testified that he asked Dominguez if there were any limits on her access to the apartment, and she responded that she could go in and out as needed using the key and that she had access to the whole unit to get clothes and other items for Victor Jr. Officer Kotsianis' credible testimony corroborates Officer Everett's testimony.

The testimony offered by both Everett and Kostianis reflects that they asked a series of questions to determine if Dominguez had the authority to consent to a search, as required under the law. *See Goins*, 437 F.3d at 648. The officers testified that Dominguez told them that she regularly entered the home while Garcia was not home and that she had access to all areas of the home, including the bedroom and closet, in order to care for Victor Jr. In addition, as both officers testified, Ms. Dominguez told them that she accessed Defendant's apartment with a key, and in fact, she had access to a key to the apartment. The officers credibly testified that Dominguez indicated that she regularly used that key to enter Garcia's apartment when he was not home. Further, her caretaker duties for Victor Jr., as she described them to the officers, while not exactly household chores as specified in *Groves*, gave her authority to access all parts of the small apartment. In addition, they credibly testified that Ms. Dominguez told them that she had authority to permit third parties to enter the apartment, and she signed a consent form for them to search the apartment. These facts available to the officers at the time of the search could lead a reasonable officer to conclude that Dominguez had authority over the home. *See Groves*, 530 F.3d at 509-10 (possessing the key to a home and performing household chores in that home are factors that could be considered when evaluating whether a person had authority over a residence). Furthermore, when they entered the apartment, Dominguez was comfortable using

8

the key to open the door and was familiar with the layout which further supported her accessibility to the apartment. *See United States v. Ryerson*, 545 F.3d 483, 489 (7th Cir. 2008) (ex-wife's familiarity with premises, along with other evidence that she lived there, "make it reasonable for the police to believe she could consent" to the search of the premises.).

Ms. Dominguez's testimony that her access was much more limited and that she only went to the apartment when her uncle was present was not credible in light of all the testimony at the hearing. Her testimony was marked by some inconsistencies about the extent of her access to the apartment, including her inconsistent testimony on whether her mother had a key to the apartment or whether the agents gave her the key. In addition, Dominguez's demeanor while testifying was extremely nervous and hesitant. The Court further questions Dominguez's credibility based on her testimony that she might not have been listening to the law enforcement agents when they were questioning her about access to Garcia's home. Significantly, Dominguez admitted that she was worried that the officers would take Victor, Jr. to the Department of Children and Family Services, and that it is possible that the law enforcement agents asked her questions and she gave the wrong answer. Moreover, when Dominguez was asked if she ever told the agents that her mother had access to go in and out of Garcia's apartment whenever she wished, Dominguez responded "By mistake probably."

Taking these admissions into consideration, along with the consistent and very credible testimony from the two law enforcement officers, the Court denies Defendant's motion to suppress. A reasonable person could have concluded that Ms. Dominguez had authority to consent to the search of Garcia's home. Therefore, based on the testimony presented at the

9

hearing and the credibility of the witnesses who testified, the Court denies Defendant's motion to suppress evidence.

## CONCLUSION

Because the facts available to the law enforcement officers at the time they searched Defendant's apartment would allow a person of reasonable caution to believe that Ms. Dominguez had authority over the apartment, Defendant's Garcia's motion to suppress the evidence is denied.

DATED: November 16, 2010　　　　　　　　ENTERED:

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　AMY J. ST. EVE
　　　　　　　　　　　　　　　　　　　　United States District Court Judge